**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**RIA R SQUARED, INC.,**

**Plaintiff,**

**v.**

**SHINHAN SECURITIES CO., LTD.,**

**Defendant.**

______________________________________/

**Case No. 26-cv-6748**

# MEMORANDUM OF LAW IN SUPPORT OF RIA R SQUARED, INC.'S MOTION TO TRANSFER VENUE

## PRELIMINARY STATEMENT

This is the unusual bankruptcy transfer case in which the strongest reason for transfer is not merely that a Chapter 11 case is pending elsewhere, but that a second, already pending adversary proceeding in the bankruptcy court requires adjudication of property and lien issues that overlap directly with the claims and counterclaims removed here. RIA commenced this action in New York State court (the "**New York Action**") before bankruptcy. After RIA filed Chapter 11 in the Southern District of Florida, however, it commenced the Florida Adversary Proceeding against the same defendant, Shinhan Securities Co., Ltd. ("**Shinhan**"), seeking determinations under 11 U.S.C. §§ 541, 544, 551, and 506 concerning assets RIA identifies as estate property and Shinhan identifies as its property or collateral. Two days later, RIA removed the New York Action under 28 U.S.C. § 1452. Notice of Removal at ¶¶ 3 8, Dkt. No. 1.

The overlap is concrete. Shinhan's New York counterclaims allege, among other things, that RIA converted collateral and wrongfully prevented Shinhan from taking legal possession of custodial assets after alleged defaults under the parties' January 25, 2019 Global Master Securities Lending Agreement ("**GMSLA**") and Supplemental Lending Agreement ("**SLA**"). Shinhan Answer & Countercls. at ¶¶ 197 256, *RIA R Squared, Inc. v. Shinhan Sec. Co., Ltd.*, Index No.

659538/2024 (Sup. Ct. N.Y. Cnty.), NYSCEF Doc. No. 73. The Florida adversary complaint, in turn, asks whether Shinhan acquired ownership of disputed assets under those same agreements, whether any security interest attached or was perfected, whether any unperfected interest is avoidable under § 544 and preserved for the estate under § 551, and whether Shinhan holds a secured claim under § 506. Adv. Compl. at ¶¶ 14–22, 73–83. Those issues cannot sensibly be administered as if the proceedings were strangers to one another.

Accordingly, as argued more fully below, transfer is not only warranted but necessary..

## BACKGROUND

### I. The New York Action and Shinhan's Counterclaims

RIA commenced the New York Action on December 9, 2024. Notice of Removal at ¶ 1. The operative pleading arose from RIA and Shinhan's securities lending relationship and the GMSLA and SLA executed on January 25, 2019. The original complaint alleged five causes of action. On July 31, 2025, the state court dismissed two and permitted three to proceed: (1) breach of the GMSLA, SLA, and alleged Securities Delivery Agreement; (2) breach of an alleged $750 million securities loan agreement; and (3) fraudulent inducement. *Id.* at ¶ 2. RIA alleges, among other things, that in April 2020 it returned approximately $47 million of securities in exchange for Shinhan's promise to return or re-lend those securities as well as to extend an additional $100 million of securities, and that Shinhan later failed to perform. State Compl. at ¶¶ 75–100, NYSCEF Doc. No. 1.

Shinhan answered and asserted counterclaims for breach of contract, breach of the implied covenant, conversion, and unjust enrichment. Those counterclaims are particularly important to this motion. Shinhan alleges that the GMSLA and SLA govern the parties' securities lending relationship, that RIA failed to honor termination and recall rights, that alleged defaults entitled

Shinhan to take legal possession of custodial accounts and collateral, and that RIA obstructed those rights. Shinhan Answer & Countercls. ¶¶ 197 234. Shinhan's conversion claim alleges that RIA retained recalled securities and obstructed Shinhan's alleged right to legal possession of collateral. *Id.* ¶¶ 235 246. Its unjust enrichment claim likewise seeks the value of allegedly retained securities and collateral and relief concerning Shinhan's asserted possessory rights. *Id.* ¶¶ 247 256. Thus, the New York Action's counterclaims do not concern damages alone; they place the parties' competing property and possessory theories under the GMSLA and SLA squarely in issue.

The state court litigation has materially progressed, and RIA does not minimize that fact. The state court addressed discovery and interim relief before the bankruptcy filing. Shinhan Mot. ¶¶ 12 21, Dkt. No. 20 in the Chapter 11 Case. But that investment is not lost by transfer. Federal Rule of Bankruptcy Procedure 9027(i)(3) preserves pre removal orders until modified or dissolved by the federal court. More importantly, the Chapter 11 filing created new bankruptcy specific issues estate property, lien perfection, avoidance, claim classification, and distribution consequences that the prepetition state litigation neither could nor did resolve.

## II. <u>The Florida Chapter 11 Case</u>

On July 15, 2026, RIA filed its voluntary Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Florida, Miami Division, Case No. 26 19251 CLC. Notice of Removal at ¶ 3. RIA remains a debtor in possession under 11 U.S.C. §§ 1107(a) and 1108. According to RIA's Case Management Summary, RIA is a Delaware corporation based in Florida, with its principal place of business and administrative offices in Miami. Case Mgmt. Summ. at ¶¶ 3 4, Dkt. No. 13.

RIA's bankruptcy disclosures make the RIA-Shinhan dispute central to estate administration. RIA states that years of contractual negotiations and litigation with Shinhan and

other counterparties contributed materially to its financial distress, that it commenced Chapter 11 in part to preserve and monetize litigation claims and investment assets, reconcile disputed claims and setoff positions, and centralize pending disputes, and that disputed litigation claims exceed $185 million on the liability side. *Id.* at ¶¶ 5, 8. RIA also reports that litigation and causes of action are a substantial category of estate assets. *Id.* at ¶ 9. Those figures are RIA's estimates and remain disputed; their significance here is that both the Debtor and Shinhan have represented to the bankruptcy court that the bilateral dispute bears heavily on estate assets, liabilities, and the feasibility of administration.

Shinhan itself is already an active litigant in the Chapter 11 Case. On July 30, 2026, Shinhan filed an emergency motion to dismiss the Chapter 11 Case or, alternatively, for relief from the automatic stay. Dkt. No. 20. Among other things, Shinhan argues that assets RIA schedules as estate property are instead Shinhan's property or collateral and seeks authority to pursue its alleged rights. Shinhan Mot. at ¶¶ 43–50. RIA opposes those assertions and contends Shinhan holds, at most, a disputed unsecured claim. Debtor's Resp. & Opp'n at 1–6, Dkt. No. 41. Whatever the merits, the parties are already litigating in Miami the character and treatment of the very property interests that overlap Shinhan's New York counterclaims.

## III. <u>The Florida Adversary Proceeding Directly Overlaps This Action</u>

On August 5, 2026, RIA commenced the Florida Adversary Proceeding, *RIA R Squared, Inc. v. Shinhan Securities Co., Ltd.*, Adv. Pro. No. 26-01268-CLC. The complaint seeks a declaration regarding ownership of the "Disputed Assets" and the validity, priority, perfection, and extent of Shinhan's asserted lien or other interest, and alternatively seeks to avoid and preserve any unperfected security interest under 11 U.S.C. §§ 544(a)(1), 551, and 1107(a). Adv. Compl. At

¶¶ 14–22, 110–133. The Disputed Assets include WSFS accounts identified in RIA's schedules and listed investment assets. *Id.* at ¶¶ 8, 53 77.

The Adversary Complaint expressly connects its issues to the removed New York Action. It identifies Shinhan's New York counterclaims for breach of contract, conversion, and unjust enrichment concerning the lent securities and assets Shinhan characterizes as collateral; it notes that the New York Action is stayed pending the bankruptcy; and it distinguishes the bankruptcy created issues ownership of petition date estate assets, lien perfection and priority, 11 U.S.C. § 544 avoidance, and resulting claim status from the broader damages claims. *Id.* at ¶¶ 78–85. In its opposition to Shinhan's dismissal motion, RIA likewise informed the Florida Bankruptcy Court that the proceedings have overlapping allegations and that RIA removed the New York Action so it could seek transfer for adjudication of the state law claims alongside the adversary claims. Debtor's Resp. & Opp'n at ¶¶ 8–10.

The resulting overlap is unusually strong. A tribunal deciding Shinhan's New York conversion and contract counterclaims may need to decide whether Shinhan had a present right to possession or control of particular collateral under the GMSLA and SLA. The Florida Bankruptcy Court is already being asked to decide whether Shinhan owns the Disputed Assets, whether a security interest exists and is perfected, whether an unperfected interest may be avoided, and what secured status follows. Those questions arise from the same lending relationship, the same contractual enforcement provisions, the same asserted defaults, and overlapping assets. Keeping the proceedings in different venues creates a material risk of duplicate discovery, inconsistent constructions and interpretations of the agreements, and incompatible determinations concerning Shinhan's property and lien rights.

## IV. Removal and the Relief Requested

RIA removed the remaining New York claims and counterclaims to this Court on August 7, 2026 under 28 U.S.C. § 1452(a) and Federal Rule of Bankruptcy Procedure 9027. Notice of Removal at ¶¶ 6–12. Because the state action was pending in New York County, initial removal to this District was required; § 1452 did not permit RIA to remove the New York Action directly to Florida. RIA now requests the separate discretionary step contemplated by 28 U.S.C. §§ 1412 and 1404(a)—transfer from this District to the United States District Court for the Southern District of Florida, Miami Division. Upon transfer, the proceeding will be subject to *Southern District of Florida Administrative Order 2024-84*, which refers all proceedings arising under Title 11, arising in a Title 11 case, or related to a Title 11 case to that District's bankruptcy judges.

## ARGUMENT

## I. This Court May Transfer The Proceeding Under 28 U.S.C. § 1412 and § 1404(A)

28 U.S.C. § 1412 provides that a district court "may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. In the Second Circuit, 28 U.S.C. § 1412 permits a broad, flexible inquiry, and the district administering the underlying bankruptcy is presumed to be the appropriate forum for a core bankruptcy proceeding because centralization promotes economical and efficient estate administration. *See Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1390 91 (2d Cir. 1990) (affirming transfer and recognizing the bankruptcy home court presumption in light of judicial economy, timeliness, fairness, and efficient administration). The movant ordinarily bears a preponderance burden under § 1412. *Diligent*, 2025 WL 1502032, at *6.

Section 1404(a) separately authorizes transfer "[f]or the convenience of parties and witnesses, in the interest of justice" to a district where the action might have been brought. 28 U.S.C. § 1404(a). In this District, a movant under § 1404(a) bears the heavier burden of showing by clear and convincing evidence that transfer is warranted. *ICICI Bank Ltd. v. Essar Global Fund Ltd.*, 565 B.R. 241, 250 (S.D.N.Y. 2017) (applying § 1404 to a non-core removed bankruptcy related contract action and requiring a clear and convincing showing). Relevant considerations include the convenience of witnesses and parties, location of proof, locus of operative facts, availability of process, relative means, familiarity with governing law, plaintiff's forum choice, and trial efficiency and the interests of justice. *Id.* at 250 51; *Credit Suisse*, 2015 WL 5257003, at *7.

The Court need not force all components of this controversy into a single core/non core label to grant relief. Current Bankruptcy Rule 7001(j) treats a proceeding to determine a claim or cause of action removed under § 1452 as an adversary proceeding for procedural purposes, and Rule 9027(g)(1) makes Part VII of the Bankruptcy Rules applicable after removal. Core status, however, turns on the substance of the claim. RIA therefore proceeds under § 1412 to the extent the controversy involves core bankruptcy matters and under § 1404(a) independently for the surviving prepetition state law claims. That approach is consistent with *ICICI Bank*, 565 B.R. at 248 50 (distinguishing § 1412 treatment of core proceedings from § 1404 treatment of non core matters), and *Zohar CDO 2003 1, Ltd. v. Patriarch Partners, LLC*, 620 B.R. 456, 466 69 (S.D.N.Y. 2020) (analyzing § 1412 narrowly and applying § 1404 to claims that did not arise under Title 11). Because the facts satisfy § 1404(a)'s stricter test, transfer is warranted without overreading § 1412.

## II. The Southern District of Florida Is A Proper Transferee Forum and Will Refer the Proceeding to the Bankruptcy Court

The threshold requirement under 28 U.SC. § 1404(a) is satisfied. Under 28 U.S.C. § 1409(a), except for exceptions not implicated here, a proceeding arising under Title 11, arising in, or related to a Title 11 case may be commenced in the district where the bankruptcy case is pending. Courts in this District have relied on § 1409(a) to conclude that a bankruptcy related action "might have been brought" in the bankruptcy home district for § 1404(a) purposes. *Delaware Trust*, 534 B.R. at 520 (holding a removed action could have been brought in the District of Delaware under § 1409(a)); *see Credit Suisse*, 2015 WL 5257003, at *8.

The removed action is at least "related to" RIA's Chapter 11 Case because its outcome can alter estate assets and liabilities, the amount and treatment of Shinhan's asserted claim, setoff and recoupment positions, creditor distributions, and plan feasibility. Notice of Removal at ¶¶ 4–7. The pending Florida Adversary Proceeding makes the connection still more direct. Accordingly, this proceeding could have been brought in the Southern District of Florida under 28 U.S.C. § 1409(a).

Section 1334(e)(1) reinforces the home forum interest. It places exclusive jurisdiction over the debtor's property and property of the estate in the district where the Chapter 11 case is pending. 28 U.S.C. § 1334(e)(1). RIA does not contend that 28 U.S.C. § 1334(e)(1) makes every state law damages claim exclusively adjudicable in Florida. But the statute underscores why petition date ownership and lien status questions concerning the Disputed Assets the very questions presented in the Florida adversary proceeding should be administered through the Southern District of Florida bankruptcy forum rather than adjudicated piecemeal in a separate district.

The requested destination is the United States District Court for the Southern District of Florida not a direct transfer order to a bankruptcy judge. That distinction follows the approach

used in *Credit Suisse*, *Delaware Trust*, *Argosy*, and *Deutsche Oel & Gas*. Once docketed in the Southern District of Florida, Administrative Order 2024 84 refers to the bankruptcy judges of that District "any and all proceedings arising under Title 11 or arising in or related to a case under Title 11." The Order also preserves Article III review by providing for proposed findings and conclusions when final adjudication by a bankruptcy judge would be constitutionally unavailable. Transfer therefore centralizes administration without prejudging core status, consent, final order authority, or any jury trial issue.

## III. Trial Efficiency, Consistent Adjudication, and Estate Administration Strongly Favor Transfer

Among the transfer considerations, trial efficiency and the interests of justice carry exceptional weight where two proceedings concern the same parties, the same agreements, overlapping transactions, and competing rights in the same alleged collateral. *Credit Suisse* is the closest example. There, a New York State action was removed under 28 U.S.C. § 1452 after Chapter 11 proceedings were pending in Illinois, and the defendants sought transfer to the Illinois district for bankruptcy referral. 2015 WL 5257003, at *1–3. The court granted transfer because the lawsuit was closely intertwined with the bankruptcy and concluded that the interests of justice and trial efficiency "outweigh[ed] all other factors by far." *Id.* at *11–12. That reasoning applies with at least equal force here because RIA and Shinhan are already opposing parties in a Florida adversary proceeding that requires determinations concerning ownership, perfection, priority, avoidance, and claim status.

*Delaware Trust* reinforces the point. The court transferred a removed New York State action to Delaware for bankruptcy referral where related proceedings concerned the same transactions and a single tribunal could avoid needless expense and conflicting rulings. 534 B.R. at 520–22 (explaining that bankruptcy adjudication can provide a "one stop shop" and that the

existence of closely related proceedings strongly favors transfer). Here, the Florida Bankruptcy Court must in any event adjudicate RIA's 11 U.S.C. § 544 avoidance theory and the petition date status of assets RIA says belong to the estate. Leaving Shinhan's overlapping possession and conversion theories in New York would create exactly the two forum problem *Delaware Trust* sought to avoid.

*Argosy* is also factually instructive. That case involved lenders, a collateral agent, a security agreement, competing rights in collateral, and a bankruptcy proceeding in Kentucky. The plaintiff asserted state law contract and tort claims and relied on a forum selection clause. The court nevertheless transferred the case to the Western District of Kentucky because the dispute was materially connected to the bankruptcy court's findings and orders concerning the same collateral relationship and because one tribunal was better positioned to evaluate those issues. 2019 WL 140730, at *5–8 (granting transfer and finding the bankruptcy connection sufficiently strong even under a heightened transfer burden). RIA's case presents the same institutional concern: the Florida court is already adjudicating whether Shinhan has an ownership or perfected security interest in assets that Shinhan's New York counterclaims characterize as collateral subject to possession and recovery rights.

The more recent SDNY decisions point in the same direction. *Deutsche Oel & Gas* transferred a removed New York State action to Delaware for automatic bankruptcy referral despite a New York forum provision because similar factual allegations had already been presented in the bankruptcy process and trial efficiency was dispositive. 2020 WL 5814233, at *12–14. And *Diligent* transferred a removed New York contract and tort action to Delaware where the claims were intertwined with bankruptcy events and the bankruptcy court had superior familiarity with the underlying issues. 2025 WL 1502032, at *8–10 (holding that judicial economy and the interests

of justice favored transfer because the bankruptcy court was better positioned to adjudicate the controversy).

The transfer interest here is stronger in one critical respect: the related Florida matter is not simply a historical bankruptcy proceeding or a dispute among different parties. It is a live adversary proceeding between RIA and Shinhan. It asks the Florida court to determine legal consequences that bear directly on Shinhan's New York counterclaims and its treatment as a creditor. Coordinating the proceedings before one bankruptcy forum will permit unified case management, common discovery where appropriate, consistent construction of the GMSLA and SLA, and orderly sequencing of bankruptcy specific and state law issues. Federal Rule of Bankruptcy Procedure 7042 incorporates Civil Rule 42 in adversary proceedings, providing the transferee court tools to coordinate or consolidate common issues if and to the extent it determines appropriate. Transfer does not predetermine consolidation. Instead, it puts both proceedings where that decision can be made by one court on a complete record and a consistent interpretation of the law and facts.

Centralization also serves creditor administration. RIA's own bankruptcy filings identify the Shinhan dispute as important to estate value and liabilities, while Shinhan's pending motion asks the Florida Bankruptcy Court to determine whether Chapter 11 should continue or whether Shinhan may pursue asserted property rights notwithstanding the automatic stay. The allowance, classification, setoff, recoupment, and distribution consequences of the parties' competing claims cannot be divorced from the Chapter 11 case. The Second Circuit's home court presumption reflects the same policy: placing bankruptcy related matters in the district administering the case promotes efficient administration, judicial economy, timeliness, and fairness. *In re Manville Forest Products Corp.*, 896 F.2d at 1391.

## IV. The Asserted New York Forum Provision and RIA's Original Forum Choice Do <u>Not Outweigh the Later Arising Bankruptcy Interest</u>

RIA acknowledges that it originally selected New York. Its New York State complaint alleged that venue was proper in New York County in part because the SLA contained a choice of forum provision. State Compl. at ¶¶ 17–18. The SLA language in the record is not a model of clarity: it references English law and, in the same provision, disputes being governed or construed in the New York State Courts, while the underlying GMSLA contains separate English law and English court language. This motion does not ask the Court to resolve those contractual inconsistencies. For transfer purposes, the Court may assume in Shinhan's favor that an applicable clause selects New York and still conclude that the later created bankruptcy circumstances warrant transfer.

Ordinarily, a valid mandatory forum selection clause receives controlling weight in the § 1404 analysis absent extraordinary public interest considerations. *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49, 62–67 (2013). Bankruptcy, however, can create precisely such public interests because centralized administration concerns the rights of creditors and the court's control over estate property, not merely the private convenience of the contracting parties. *Credit Suisse*, 2015 WL 5257003, at *10–12 (assuming a mandatory New York clause and nevertheless transferring because the conflict between the action and bankruptcy created a public interest that outweighed the clause); *Argosy*, 2019 WL 140730, at *7–8 (finding the bankruptcy conflict sufficient to outweigh an assumed applicable forum selection clause); *Deutsche Oel & Gas*, 2020 WL 5814233, at *13–14 (transferring despite an exclusive New York forum clause where the bankruptcy overlap and trial efficiency were compelling); *Diligent*, 2025 WL 1502032, at *8–10 (giving decisive weight to bankruptcy administration and judicial economy despite New York forum provisions).

Those decisions fit this record. When RIA commenced the New York Action in December 2024, there was no Chapter 11 estate, no debtor in possession with 11 U.S.C. § 544 powers, no dispute over petition date lien perfection or estate ownership, and no Florida adversary proceeding. The current transfer question therefore is not simply whether RIA should be allowed to escape its original bargain. It is whether two courts should simultaneously adjudicate overlapping property and contractual issues after federal bankruptcy law created new statutory rights and a second action that can only be administered within the Chapter 11 structure. The public interest in one coherent bankruptcy administration is substantially stronger than it was when RIA selected New York prepetition.

Nor is RIA seeking to erase New York's work. Bankruptcy Rule 9027(i)(3) preserves pre removal state court orders unless modified. The transferee court will receive the procedural history, discovery record, and prior rulings. The question is where the litigation should proceed from this point forward now that the parties' property dispute has become intertwined with a live adversary and claims administration issues under 11 U.S.C. §§ 541 and 544. The answer is the bankruptcy home district.

## V. The Remaining Private Interest and Governing Law Factors Are Neutral or Favor Florida

The remaining 28 U.S.C. § 1404 factors do not overcome the decisive judicial efficiency considerations. Shinhan is a Korean entity, not a New York resident, and it has already appeared through counsel in the Florida Chapter 11 Case to seek affirmative relief. RIA is presently a Florida based debtor in possession whose principal place of business and bankruptcy administration are in Miami. Case Mgmt. Summ. at ¶¶ 3–4. Requiring both parties to litigate in Florida does not create a new forum for strangers; it uses the forum in which they are already actively litigating the central estate property dispute.

Witness convenience also does not materially favor retaining the action. The central dispute concerns sophisticated financial agreements, transaction records, custodial arrangements, and party witnesses. Many relevant individuals and records are associated with RIA, Shinhan, financial institutions, and counterparties outside New York. No record before the Court shows that a concentration of non-party witnesses in New York would be unavailable in Florida. More importantly, transfer reduces aggregate litigation burden by allowing discovery and expert work on common contractual and asset issues to be coordinated rather than repeated in two districts.

The locus of operative facts factor is similarly mixed. The original complaint alleges New York contacts, but the dispute involves a Korean securities firm, a Delaware debtor now based in Florida, securities lending transactions with multijurisdictional custodial relationships, and petition date assets held through WSFS and investment positions governed in material respects by Delaware commercial law according to the adversary complaint. The Florida bankruptcy events petition date, estate creation, 11 U.S.C. § 544 rights, claim classification, stay litigation, and the adversary proceeding are independently operative facts that did not exist when the New York case began. No single prepetition geographic locus therefore outweighs the bankruptcy forum's institutional interest.

The possible application of New York law also is not dispositive. Federal bankruptcy courts routinely apply state contract and commercial law, and the Florida adversary already requires application of state law property and perfection rules as predicates to federal bankruptcy relief. *Credit Suisse*, 2015 WL 5257003, at *12 (treating New York governing law as a minor consideration where bankruptcy efficiency favored transfer); *Delaware Trust*, 534 B.R. at 522 (similar). To the extent English law, New York law, or Delaware UCC principles apply to different instruments or issues, both federal forums are equally capable of applying that law.

Finally, relative means and access to proof do not favor keeping the cases separate. RIA is in Chapter 11 and has represented that litigation expense has strained liquidity. Case Mgmt. Summ. at ¶ 5. A coordinated forum reduces duplicated professional expense for the estate. Shinhan, meanwhile, is already represented in the Florida bankruptcy and has invoked that court's jurisdiction for dismissal and stay relief. The practical convenience of one forum therefore favors transfer.

## VI. The State Court's Prior Investment Does Not Outweigh the Need to Coordinate the Live Florida Adversary Proceeding

Shinhan is likely to emphasize that the New York Action has progressed substantially. That is a legitimate factor, but it is not dispositive. First, the New York Action had not yet reached deposition discovery. Second, the New York Action is presently stayed in light of the bankruptcy. Adv. Compl. at ¶¶ 78–81. Third, the New York court's prior orders and developed record survive removal and can be used by the transferee court. Fed. R. Bankr. P. 9027(i)(3). Fourth, and most importantly, the Florida Bankruptcy Court must now adjudicate new issues that no amount of prepetition state court investment can eliminate: what is property of the estate on the petition date, whether Shinhan owns or has a perfected lien in that property, whether an interest is avoidable under 11 U.S.C. § 544 and preserved under 11 U.S.C. § 551, whether Shinhan holds a secured claim, and how the parties' obligations affect the collective creditor process.

That distinction also separates this case from decisions denying transfer where the removed state action was merely economically related to a bankruptcy. In *ICICI Bank*, for example, the court denied transfer of a non-core guaranty action where the movants failed to show that the Delaware bankruptcy court needed to resolve the same issues and the 28 U.S.C. § 1404 balance did not overcome the chosen New York forum. 565 B.R. at 251-57. Here, by contrast, RIA and Shinhan are already adverse parties in a Florida proceeding whose pleaded issues concern the same

underlying agreements and competing property rights that animate Shinhan's New York counterclaims.

The June 2026 decision in *One William Street Capital Master Fund Ltd. v. Wilmington Trust, N.A.*, No. 26 CV 01123 (JAV), slip op. at 8–14 (S.D.N.Y. June 5, 2026), likewise does not counsel against transfer on this record. There, the court granted mandatory abstention and remand before reaching transfer and emphasized, in its discretionary analysis, that the state action "does not turn on any issue that is now being litigated in Bankruptcy Court." *Id.* at 13. RIA's situation is the opposite: the Florida adversary affirmatively puts ownership, perfection, priority, avoidance, and Shinhan's resulting secured status in issue, while Shinhan's New York counterclaims seek relief premised on its alleged ownership, possessory, and collateral rights. No remand motion is presently before this Court on the record supplied with this motion; if Shinhan later seeks abstention or remand, RIA reserves all responses to that distinct request. The present venue record strongly favors transfer.

## VII. Transfer Will Permit But Not Prejudge Coordination With the Florida Adversary Proceeding

RIA's ultimate objective is orderly coordination, not an advisory ruling from this Court about how the transferee court must manage the cases. After transfer and referral, the bankruptcy court will have both proceedings before it and can determine whether common issues should be consolidated for discovery or trial, sequenced, stayed, or otherwise coordinated under Bankruptcy Rule 7042 and Civil Rule 42. That court will also be positioned to decide core and non-core status claim by claim, consent to final adjudication, any jury trial rights, and whether proposed findings are required. *Administrative Order 2024-84* expressly preserves the Article III framework for referred proceedings.

This restrained approach is another reason transfer is appropriate. It avoids inconsistent determinations while preserving all parties' procedural rights. It also gives the court administering the estate the ability to sequence the bankruptcy specific ownership and lien issues with the broader state law damages claims in the manner that best protects estate value, creditor equality, and judicial resources. The statutes require no more.

## CONCLUSION

For the foregoing reasons, RIA respectfully requests that the Court grant the motion and transfer this action to the United States District Court for the Southern District of Florida, Miami Division, pursuant to 28 U.S.C. § 1412 to the extent applicable and, independently, pursuant to 28 U.S.C. § 1404(a), for referral under *Administrative Order 2024-84* and further proceedings consistent with the transferee court's orders.

Dated: August 11, 2026

**MANDELBAUM BARRETT PC**
*Counsel for Ria R. Squared Inc.*
570 Lexington Avenue, 21st Floor
New York, NY 10022
Telephone: (646) 369-0250
Email: jbauchner@mblawfirm.com

_______________________________.
Joshua S. Bauchner, Esq.
(NY Bar No. 4016168)

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing contains 5,150 words, excluding the caption, any index, table of contents, table of authorities, signature block, and this certificate, and therefore complies with the applicable word count limitation. I relied on the word count function of the word processing program used to prepare the memorandum.

_________________________________.
Joshua S. Bauchner, Esq.
(NY Bar No. 4016168)